RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0185P (6th Cir.)
File Name: 03a0185p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JOESPH A. WITTSTOCK, III,
    *Plaintiff-Appellant,*

    *v.*

MARK A. VAN SILE, INC.,
    *Defendant-Appellee.*

No. 01-2482

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-72135—Nancy G. Edmunds, District Judge.

Argued: May 8, 2003

Decided and Filed: June 6, 2003

Before: KENNEDY, SILER, and GILMAN, Circuit
Judges.

———————————

### COUNSEL

**ARGUED:** E. Donald Goodman, John P. Williams,
WILLIAMS & WILLIAMS, Royal Oak, Michigan, for
Appellant. Thomas H. Keating, T.H. KEATING
ASSOCIATION, Grosse Pointe Farms, Michigan, for
Appellee. **ON BRIEF:** E. Donald Goodman, John P.
Williams, WILLIAMS & WILLIAMS, Royal Oak, Michigan,
for Appellant. Thomas H. Keating, T.H. KEATING

ASSOCIATION, Grosse Pointe Farms, Michigan, for
Appellee.

———————————

### OPINION

———————————

KENNEDY, Circuit Judge. Joseph A. Wittstock, III,
(Plaintiff) appeals the district court's dismissal of his
complaint for lack of subject matter jurisdiction and failure to
state a claim upon which relief can be granted. For the
foregoing reasons, we **AFFIRM** the judgment of the district
court.

### I.

Joseph A. Wittstock, Jr., and Doris A. Wittstock
(Wittstocks), owners of residential property located in
Roseville, Michigan, failed to pay taxes owed on that property
beginning in 1990. Defendant Mark A. Van Sile, Inc., (Van
Sile) acquired the rights of a tax sale purchaser in May 1993
and obtained a tax deed in June 1994. In August 1995, Van
Sile initiated a quiet title action in Macomb County Circuit
Court. A default judgment in favor of Van Sile was entered
in September 1995 after the Wittstocks failed to answer the
complaint. In 1996, Plaintiff was appointed co-conservator of
his father, Joseph A. Wittstock, Jr. Plaintiff, then acting in a
representative capacity, sought unsuccessfully to have the
default judgment set aside, altered or amended.

Plaintiff, in his individual capacity, then brought this action
alleging that he was "denied due process of law by virtue of
[Van Sile's] failure to provide Plaintiff notice and opportunity
to be heard relative to Plaintiff's property rights." Plaintiff
contends that before title could be quieted in Van Sile, Van
Sile must give Plaintiff notice under the General Property Tax
Act. In relevant part, the statute states:

(1) A writ of assistance or other process for the
possession of land the title to which was obtained by or

through a tax sale, except if title is obtained under section 131, shall not be issued until 6 months after there is filed with the county treasurer of the county where the land is situated, a return by the sheriff of that county showing service of the notice prescribed in subsection (2). The return shall indicate that the sheriff has made personal or substituted service of the notice upon the following persons who were, as of the date the notice was delivered to the sheriff for service:
(a) The last grantee or grantees in the regular chain of title of the land, or of an interest in the land, according to the records of the county register of deeds.
(b) The person or persons in the actual open possession of the land.

M.C.L.A. § 211.140 (West 1986). Plaintiff claims that he was entitled to notice as a "person in actual open possession" because he lived at the subject property with his parents at the time that the notice was due. The district court dismissed the Complaint for failure to state a claim under Rule 12(b)(6) on the ground that Plaintiff had "failed to properly connect the actions of Defendant to the requisite level of state action to sustain a due process claim," and, in the alternative, lack of subject matter jurisdiction under Rule 12(b)(1).

## II.

We review *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002). As an initial matter, we note that the Complaint does not allege a basis for federal jurisdiction other than reciting that "[t]his action arises under the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States." The district court observed that the Complaint purports to state a cause of action directly under 28 U.S.C. § 1331, but went on to construe the Complaint as alleging a cause of action under 42 U.S.C. § 1983. Plaintiff's prayer for relief includes a

request for costs and attorneys fees. Given that such relief is available to §1983 plaintiffs, 42 U.S.C. § 1988 (b), but not plaintiffs bringing suit directly under the Constitution, the district court fairly read the Complaint as seeking to state a cause of action under § 1983.

To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim. *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003). A § 1983 claim must present two elements: (1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law. *Id.* A private actor may be considered a person acting under color of state law (a state actor) if "(1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the state' and (2) the offending party 'acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Id.* at 590-91 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

The Sixth Circuit applies three tests for determining whether private action is fairly attributable to the state: the nexus test, the public function test, and the state compulsion test. *Id.* at 591. The nexus test requires that a sufficiently close relationship exist between the state and the private actor (through regulation or by contract) so that private action may be attributable to the state. *Id.* The public function test requires that the private actor exercise powers that are traditionally reserved to the state. *Id.* And, the state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state. *Id.*

Plaintiff argues that Van Sile is "a mere instrumentality of the State of Michigan in carrying out its fundamental tax collection powers," and that Van Sile committed "an act generally associated with a power exercised by the

state—enforcement of a tax lien—and the state aides in that effort." Plaintiff's arguments suggest that we should find Van Sile a state actor under the public function test. Only a narrow range of private action, however, has been deemed state action under this test. Examples include private actors exercising the power of eminent domain, *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352-53 (1974), and conducting elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157-58 (1978). When considering whether private action should be attributed to the state under the public function test, the court conducts a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing. *Tahfs*, 316 F.3d at 593.

Plaintiff advances no historical argument in support of his allegations. Rather, Plaintiff asserts that a tax sale purchaser is a state actor because (1) the purchaser enforces the state's tax lien against the property and does so with the aid of the county sheriff and county treasurer and, (2) the purchaser carries out aspects of the state's tax collection function that the state itself would have had to undertake, if the state were to have taken title to the property. As to Plaintiff's first assertion, a tax deed holder does not enforce a state tax lien through a quiet title action. A tax lien is enforced when the state receives a foreclosure judgment authorizing the sale of the property for failure to pay delinquent taxes. M.C.L.A. § 211.67. By initiating a quiet title action, a tax deed holder seeks a judgment that the holder's interest in the subject land is superior to that of any other person claiming an interest in the same land. M.C.L.A. § 600.2932(1) (West 2000).

As to Plaintiff's second assertion, the state is not required to serve notice to the persons identified in § 211.140 if it takes title to tax foreclosed property. Instead, if a foreclosed property is occupied, the state must give personal notice to the occupant that the property has been deeded to the state and, unless redeemed, will be sold to the highest bidder, deeded to the local unit of government or retained by the state, or, if the

property is not occupied, the same notice must be posted conspicuously on the property. M.C.L.A. § 211.131c(5).

Plaintiff's contention that state officials aided Van Sile in enforcing a state tax lien suggests that, in the alternative, Van Sile's conduct should be attributed to the state under the nexus test. But as we stated in *Northrip v. Federal National Mortgage Association,* "[s]tate action does not necessarily result whenever a state renders any sort of benefit or service to a private entity or seeks to regulate private activity in any degree." 527 F.2d 23, 28 (6th Cir. 1975). In *Northrip*, plaintiff argued that the Federal National Mortgage Association (FNMA) was a state actor because the county sheriff conducted a foreclosure sale on behalf of FNMA and the county register of deeds transferred title to the foreclosed property. We found the county sheriff's role in the foreclosure sale to be incidental, rather than essential, to the remedy sought by the mortgagee because Michigan law permits a mortgagee and mortgagor to agree that another person may conduct a foreclosure sale. *Id.* With respect to the county register of deeds, we found that "there is little significance in the fact that a clerk may perform the ministerial act of recording the deed." *Id.* Here, we also find that the county sheriff's function in regard to a tax deed holder's quiet title action is incidental. The county sheriff's role in serving the required notice(s) is to preserve the public peace, not to assist the tax deed holder take possession of the foreclosed property. And, the county treasurer's role in filing a return showing proof of service by the county sheriff is purely ministerial. Consequently, there is not a sufficiently close regulatory relationship between a tax deed holder and the state to warrant attributing a tax deed holder's action (or inaction, as in this case) to the state.

Finally, we find that Plaintiff has not alleged the deprivation of a right guaranteed by the Constitution. Plaintiff claims that Van Sile's failure to provide him notice deprived him of property and property rights without due process. Plaintiff, however, has not alleged any property right or interest in his parents' real estate. He is not an owner of

the property, nor is he a holder of a mortgage or lien interest. At oral argument, Plaintiff's counsel contended that Plaintiff's status is that of a tenant-at-will because he has assisted financially with the maintenance of the property in exchange for his tenancy. Defense counsel countered that Plaintiff's status is that of a gratuitous licensee. In either case, Plaintiff's interest in his parents' real estate derives solely from his parents' ownership of the property and their right to possess it. Because the Complaint does not allege that Plaintiff has an independent legal interest in the property, Plaintiff has failed to plead a material element of his § 1983 claim.

### III.

In sum, we **AFFIRM** the district court's dismissal of the Complaint for failure to state a claim. Further, because we find that Plaintiff's Complaint was properly dismissed under Rule 12(b)(6), we need not consider whether the Complaint was subject to dismissal under Rule 12(b)(1).